IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WALT JASPER SAMUEL SHRUM,

    Plaintiff,

v.                                                                            Case No. 20-1314-JWB

DUSTIN COOKE, *Investigator, Kingman County
Sheriff's Office, in his official and individual capacities*;
TRAVIS SOWERS, *Sergeant, City of Kingman, Kansas
Police Department, in his official and individual capacities*;
KINGMAN COUNTY, KANSAS;
CITY OF KINGMAN, KANSAS;
RANDY L. HILL, *Sheriff, Kingman County, in his official and
individual capacities*; and
DAVID LUX, *Chief, City of Kingman, Kansas Police
Department, in his official and individual capacities*,

    Defendants.

**MEMORANDUM AND ORDER**

This case comes before the court on motions to dismiss by the "City Defendants" (Lux, Sowers, and the City of Kingman) and the "County Defendants" (Cooke, Hill, and Kingman County). (Docs. 26, 32.¹) The motions have been fully briefed by the parties and are ripe for decision. (Docs. 27, 33, 41, 42, 52, 53.) For the reasons stated herein, Defendants' motions to dismiss the complaint are GRANTED.

**I. Facts and Procedural History**

The following allegations are taken from the complaint. (Doc. 1.) Plaintiff lived at 508 West Avenue D in Kingman, Kansas, with his wife Candice Hill. In the early morning hours of

---

¹ On May 18, 2021, Plaintiff voluntarily dismissed his claims against an additional group of "federal Defendants" (Michael Downs, Justin Sprague, Neal Tierney, and the United States). (Doc. 45.)

March 11, 2015, Hill suffered a medical emergency, having a seizure and losing consciousness. At 4:54 a.m., Plaintiff called 911 to report the emergency, telling the operator Hill was not breathing and that she may have overdosed on prescription medication. Within five minutes of the call, Captain Paul Hinton of the City of Kingman Police Department arrived. Plaintiff was performing CPR on Hill in their bedroom. Hinton relieved Plaintiff and continued CPR until EMS arrived at 5:11 a.m. (*Id.* at 10.) About twenty-five minutes after EMS arrived, the ambulance transported Hill to the hospital. Everyone at the scene, including Plaintiff, went to the hospital. Medical professionals at the hospital pronounced Hill dead at 5:45 a.m. Hill was thirty-three years old. (*Id.* at 11.)

Defendant Sowers, a sergeant with the Kingman Police Department, arrived at Plaintiff's house at 6:19 a.m. and secured the premises.[2] (*Id.* at 13.) Sowers called Defendant Cooke, an investigator with the Kingman County Sheriff's Office, and informed him of Hill's death. Cooke was tasked by his supervisors with investigating the medical call and Hill's death. He was told "that they had a 30-year old female[,] that … it was initially a medical call, and that it needed to be investigated [but] … it was not a suspicious death." (*Id.*) Cooke arrived at the hospital at 6:49 a.m. He asked Plaintiff to accompany him to the Kingman County Law Enforcement Center to discuss the circumstances surrounding Hill's death, which Plaintiff agreed to do. At the Center, Cooke began questioning Plaintiff in a small interview room just after 7:00 a.m. Shortly after they began, Plaintiff received a call from a friend who said she might come over to the house, but Plaintiff told her, "I ain't home yet because they ain't letting me go home yet." (*Id.* at 14.) Plaintiff was coherent but was frequently overcome with emotion. Cooke and Plaintiff took a thirty-minute

---

[2] The complaint alleges that Sowers "secured Plaintiff's home" but does not explain what Sowers did or what that term means. (Doc. 1 at 12.) It also alleges that Sowers "excluded Plaintiff Shrum from his home" beginning at 7:02 a.m. but does not explain how Sowers did so given that Plaintiff was at the Law Enforcement Center at that time. (*Id.*)

2

break just after 8:30 a.m., at which time Cooke learned the coroner wanted to know about Hill's medications and about other medications in the home.

Cooke's questioning of Plaintiff resumed around 9:05 a.m. He told Plaintiff an autopsy was scheduled for 1:30 p.m. that day in Wichita. Cooke told Plaintiff, "I'm gonna go ahead and hold onto your house as a scene, okay, until I get done with the autopsy." (*Id.* at 14.) Cooke said he would have Plaintiff execute a consent to search form and that Cooke would retrieve the medications from the house, but Plaintiff said, "I can't do it unless I have an attorney go over it." (*Id.* at 15.) Cooke told Plaintiff that he (Plaintiff) could not go in the house, that Plaintiff's two dogs could not remain in the house, and that he should tell Cooke where to find the medications. (*Id.* at 14-15.) Cooke said he hoped the hold on the house was temporary and would be over by that afternoon. Plaintiff told Cooke where he believed Hill's medication and his own medications were in the house. (*Id.* at 16.)

Plaintiff, Cooke, and a friend of Plaintiff's went to Plaintiff's house at 9:30 a.m. Cooke placed a consent form on the hood of his car, wrote "Retrieve Medication" on the form, and explained it to Plaintiff. Plaintiff said he understood and signed it. Plaintiff believed at the time he had no choice but to sign the form. Plaintiff gave Cooke a key to the house. At some point Plaintiff asked Cooke if he could go inside to use the bathroom, but Cooke would not permit it, and Plaintiff was forced to relieve himself outside in the presence of others.

Cooke entered the house and retrieved the medications described by Plaintiff. Sowers was present and did not stop Cooke from searching the house. While he was in the house, Cooke took fifty-six photographs of the kitchen and bedroom where the medications were found. One of the photographs showed ammunition in a bedroom closet. When Cooke returned to the sheriff's office around 11:00 a.m., he was reminded by another officer that Plaintiff was a convicted felon. (*Id.* at

3

18.) After 6:00 p.m. that evening, Cooke contacted a federal law enforcement agent and asked him to obtain a search warrant for Plaintiff's house. A federal magistrate judge issued a search warrant later that evening and agents – including Cooke, Sowers, Sprague, and Downs – executed the warrant at 11:18 p.m. The officers found two loaded firearms, ammunition, six glass pipes with residue, and 4.4 grams of suspected methamphetamine. (*Id.* at 19.)

On April 1, 2015, Plaintiff was indicted for unlawful possession of firearms and ammunition by a convicted felon and possession of methamphetamine. (*Id.* at 19-20.) (*See also United States v. Shrum,* No. 15-10032-JTM, Doc. 10.[3]) Plaintiff moved to suppress the evidence, arguing it was discovered as the result of an unreasonable seizure and search of the house. The district judge denied the motion, finding among other things it was reasonable for officers to seize the house after Ms. Hill's death because they were "still not clear as to what happened and could reasonably be expected to hold the scene until the facts were sorted." (*Id.*, Doc. 48 at 20.) On December 1, 2016, Plaintiff pled guilty to one count of violating 18 U.S.C. § 922(g) under an agreement that allowed him to appeal the suppression ruling.[4] (*Id.*, Doc. 75.) On appeal, the Tenth Circuit found the seizure of the house was unreasonable under the Fourth Amendment. The court found officers "deprived [Plaintiff] of his ability to access his home for his own purposes, in his own way, on his own time, and at a location where concerned friends and well-wishers would surely come calling," and they did so when they "had no knowledge of any facts suggesting [Plaintiff] or his now-deceased wife were engaged in criminal wrongdoing inside their home."[5] *United States v. Shrum,* 908 F.3d 1219, 1230-32 (10th Cir. 2018). The court also found Plaintiff's

---

[3] The court takes judicial notice of the documents filed in the related criminal proceeding. *See Bunn v. Perdue,* 966 F.3d 1094, 1096 n. 4 (10th Cir. 2020); Fed. R. Evid. 201.
[4] Although the guideline range for the offense called for 21-27 months' imprisonment, the district judge granted Plaintiff's motion for departure and sentenced him to time served. (*Id.*, Doc. 82.)
[5] The autopsy subsequently revealed that Ms. Hill died of methamphetamine intoxication. *See Shrum,* 908 F.3d at 1227 n.4.

purported consent for the search was tainted because it was "the direct result of the illegal seizure of his home rather than an act of free will sufficient to purge its taint." *Id.* at 1238. In reaching that conclusion, the court found that "a reasonably well trained officer would have understood the seizure of [Plaintiff's] home under the circumstances presented was contrary to the Fourth Amendment." *Id.* at 1239. The court thus reversed the denial of the motion to suppress and remanded for further proceedings.[6] The mandate was filed December 7, 2018. (D. Kan. No. 15-10032-JTM, Doc. 96.) On March 7, 2019, the district court granted the government's motion to dismiss the indictment with prejudice. (*Id.*, Doc. 99.)

Plaintiff's complaint in the instant case was filed November 13, 2020. (Doc. 1.) Count I names Cooke, Sowers, and Lux, and claims a violation of 42 U.S.C. § 1983, based on the Fourth and Fourteenth amendments, for unlawful seizure, unlawful search, false arrest, malicious prosecution, use of unlawfully seized evidence, unlawful investigatory techniques, and wrongful conviction and imprisonment. (Doc. 1 at 23.) Count II alleges a § 1983 claim against Kingman County, the City of Kingman, Hill, and Lux for "violative training, supervision, policies, customs, patterns of conduct and procedures" that resulted in deprivations of Plaintiff's rights. (*Id.* at 25.) Count III alleges a § 1983 claim against Cooke, Sowers, and Lux for conspiracy to deprive Plaintiff of his constitutional rights including "his liberty, his freedom, his freedom of movement, his rights of sepulcher, his privacy, his right to be free from unreasonable searches and seizures, his right not be indicted, arrested, convicted and accused of a crime without free-standing probable cause and without ill-gotten evidence seized without his consent, his right to due process of law, and his right to be free from cruel and unusual punishment and all basic rights of American citizens." (*Id.* at

---

[6] Judge Eid concurred in part and dissented in part. She agreed that the seizure of the home was unreasonable but would have remanded to the district court for a determination of whether Plaintiff's consent was sufficiently attenuated from the violation. *Shrum,* 908 F.3d at 1241.

5

28-29.)  Counts IV and V allege negligent and intentional infliction of emotional distress against all Defendants.  (*Id.* at 30-31.)

The City Defendants move to dismiss all claims against them – i.e., claims involving seizure of the house[7] – based on the statute of limitations.  (Doc. 27 at 9-13.)  They also move to dismiss the official capacity claims against Sowers and Lux as redundant (because the City of Kingman is also sued) and the individual capacity claims against Sowers and Lux on the basis of qualified immunity.  (*Id.* at 13-14.)  They argue the complaint fails to state a claim for supervisory or municipal liability against Lux or the City, or a claim for conspiracy against any of the City Defendants.  (*Id.* at 26-27.)  Finally, they argue the court lacks jurisdiction over the state law claims because Plaintiff failed to comply with the Kansas notice-of-claim statute, K.S.A. 12-105b(d).  (*Id.* at 30.)  The County Defendants assert similar arguments.  (Doc. 33.)  Among other things, they argue the claims are barred by the statute of limitations, that the complaint fails to state a claim for malicious prosecution or a *Monell* claim against the County, that it fails to state a conspiracy claim against Cooke, that K.S.A. 12-105b(d) bars the state claims, that it fails to state a claim against Hill or Cooke, that Hill and Cooke are entitled to qualified immunity, and that Kingman County is not subject to suit.  (*Id.*)

**II.  Conceded Claims**

In response to the motions to dismiss, Plaintiff concedes that the following claims should be dismissed: Count II *Monell* claim against Kingman County; Count III conspiracy claim against Cooke, Sowers, City of Kingman, and Lux; and Counts IV and V negligent and intentional

---

[7] The City Defendants point out the complaint does not allege that Sowers procured the search warrant or that Sowers or Lux were involved in the arrest and prosecution of Plaintiff.  (Doc. 27 at 9.)  They further contend the city policies complained of in Count II "could only relate to the actions of Officer Sowers in securing the house," and that those claims as well as the conspiracy claim in Count III are barred by the statute of limitations because the only overt acts by the City Defendants involved the March 11, 2015 seizure of the house.  (*Id.* at 9-10.)

infliction of emotional distress claims against Hill, Kingman County, and City of Kingman.  (Doc. 41 at 14; Doc. 42 at 19.)   The motions to dismiss the foregoing claims are accordingly granted.

### III.  Legal Standards

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). As the Tenth Circuit observed:

> Determining whether a complaint contains enough well-pleaded facts sufficient to state a claim is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. The court must determine whether the plaintiff has pleaded enough facts to state a claim for relief that is plausible on its face, not just conceivable. Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide fair notice of what the claim is and the grounds upon which it rests. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not count as well-pleaded facts. If, in the end, a plaintiff's well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint fails to state a claim.

*Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citations and internal quotation marks omitted.)

In order to dismiss an action pursuant to Rule 12(b)(6) on the basis of an affirmative defense such as the statute of limitations, it must be clear from the dates alleged in the complaint that the right sued upon has been extinguished. *See Carbajal v. McCann*, 808 F. App'x 620, 634 (10th Cir. 2020) (citation omitted.) Where the dates alleged in the complaint clearly show that fact, the plaintiff has the burden of establishing a factual basis for tolling the statute. *Id*.

### III.  Analysis

7

A. Statute of Limitations

1. *Standards applicable to § 1983 claims.* "The statute of limitations period for a § 1983 claim is dictated by the personal injury statute of limitations in the state in which the claim arose." *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011). In Kansas, such claims are governed by the two-year period in K.S.A. 60-513(a). *Brown v. Unif. Sch. Dist. 501, Topeka Pub. Schs.*, 465 F.3d 1184, 1188 (10th Cir. 2006). State law also governs tolling of the limitations period, though federal law might additionally allow equitable tolling in rare circumstances. *Mondragon v. Thompson,* 519 F.3d 1078, 1082 (10th Cir. 2008). Federal law alone determines the date on which a claim accrues – that is, the date on which the limitations period is triggered. *Wallace v. Kato,* 549 U.S. 384, 388 (2007); *Mondragon,* 519 F.3d at 1082.

An accrual analysis begins by identifying the specific constitutional right alleged to have been violated and is guided by common law principles governing analogous torts. *McDonough v. Smith,* 139 S. Ct. 2149, 2155-56 (2019) (citation omitted). Section 1983 claims presumably accrue when a plaintiff has "a complete and present cause of action," although if a particular claim may not realistically be brought while a violation is ongoing, the claim may accrue at a later date. *Id.* (quoting *Wallace,* 549 U.S. at 388).

In *Heck v. Humphrey,* 512 U.S. 477, 490 (1994), the Court cited the tort of malicious prosecution in holding that a claim challenging the validity of a conviction or sentence under § 1983 "does not accrue until the conviction or sentence has been invalidated," in part because the claim requires a showing that the prior criminal proceeding terminated in the plaintiff's favor. The Supreme Court later indicated the same rule would apply to a § 1983 claim alleging that a conviction was obtained with the use of fabricated evidence. *McDonough,* 139 S. Ct. at 2156-57. By holding that such claims do not accrue until the underlying criminal conviction has been

8

invalidated, the rule avoids conflicting civil and criminal judgments and the use of § 1983 actions to collaterally attack criminal judgments. *Id.* at 2157. By contrast, where a § 1983 claim alleged that a plaintiff was arrested without probable cause in violation of the Fourth Amendment, the claim did not accrue when the criminal charge was ultimately dismissed, but when legal process was first initiated against the plaintiff – that is, when the plaintiff appeared before a magistrate and was bound over for trial. *Wallace,* 549 U.S. at 391. *Wallace* noted the tort of false imprisonment consists of detention without legal process, which necessarily ends when the victim becomes held pursuant to legal process. Any unlawful detention thereafter "forms part of the damages for the 'entirely distinct' tort of malicious prosecution," which remedies the wrongful *institution* of legal process rather than a wrongful detention *without* legal process. *Id.* at 390.

2. *Application to § 1983 claims*. The timeline of events in this case is clear from the allegations in the complaint and the filings in *United States v. Shrum,* No. 15-10032-JTM. As to Count I, Plaintiff's house was allegedly secured by Sowers and then seized, entered, and searched without a warrant and without probable cause by Cooke, all on March 11, 2015. (Doc. 1 at 11-15.) Lux was also allegedly present that day, although the complaint does not specify what he did. (*Id.*) Plaintiff was "unlawfully arrested on March 20, 2015," although the complaint does not specify by whom. (*Id.* at 24.) Insofar as the complaint relies on these allegations to assert § 1983 claims under the Fourth (or Fourteenth) Amendment for an unlawful seizure, search, or arrest, the court concludes these claims accrued on March 11, 2015 or, in the case of the arrest, shortly thereafter. According to the Tenth Circuit, "[c]laims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 558 (10th Cir. 1999). At the time of Plaintiff's arrest and the search and seizure of the house, there was no legal

9

obstacle to Plaintiff filing suit or recovering on § 1983 claims alleging that such actions were unlawful. *See Wallace,* 549 U.S. at 393 (the *Heck* rule for deferred accrual is called into play only when there is an outstanding criminal judgment; it does not apply to anticipated future convictions). The search and seizure claims thus accrued on March 11, 2015, and the false arrest claim accrued by March 25, 2015, when Plaintiff appeared before a magistrate judge, or at the latest by April 3, 2015, when he was arraigned on the indictment. (*United States v. Shrum*, No. 15-10032-JTM, Doc. 11.) *See Wallace*, 549 U.S. at 389 (false imprisonment ends once the victim is bound over by a magistrate or arraigned on charges). The complaint and record show that more than two years passed from these accrual dates until Plaintiff filed this action on November 13, 2020.

Plaintiff's argument that equitable tolling somehow saves these claims is unpersuasive. (Doc. 41 at 5; Doc. 42 at 6.) To begin with, Plaintiff relies on res judicata and collateral estoppel as grounds for tolling, but these doctrines do not even come into play absent a final judgment. In the underlying criminal case, judgment was not entered against Plaintiff until March 7, 2017, nearly two years after the search and seizure, and the judgment was vacated by the Tenth Circuit on December 7, 2018, nearly two years before the instant case was filed. Thus, even if the res judicata effect of a judgment could provide a basis for equitable tolling, a period of almost four years passed with no final judgment in existence before Plaintiff filed this suit on November 13, 2020. Contrary to Plaintiff's suggestion, the fact that the criminal case was ongoing did not toll the limitations period for civil claims, as there is "no support … for the far-reaching proposition that equitable tolling is appropriate to avoid the risk of concurrent litigation." *Wallace,* 549 U.S. at 396. And in Kansas, equitable tolling generally applies only when a defendant did something that affirmatively induced the plaintiff to delay in bringing the action. *See McCarty v. Tims*, No.

10

21-3082-SAC, 2021 WL 2530978, at *1 (D. Kan. June 21, 2021) (citing Kansas cases). Plaintiff has alleged no facts to plausibly support equitable tolling of the limitations period.[8] *Cf. Eikenberry v. Seward Cty.*, No. 17-3150-SAC, 2017 WL 8730465, at *2 (D. Kan. Dec. 19, 2017) (rejecting claim of equitable tolling where "Plaintiff has not shown or even alleged that he failed to file his § 1983 action within the limitations period because of affirmative acts or active deception by Defendants."), *aff'd sub nom. Eikenberry v. Seward Cty., Kansas*, 734 F. App'x 572 (10th Cir. 2018). In sum, the § 1983 claims in Count I for unlawful search, seizure, and arrest against Cooke, Sowers, and Lux are barred by the statute of limitations and must be dismissed.

Defendants argue the statute of limitations likewise bars the claims in Count II alleging that inadequate training, supervision, or policies by the city or by city and county officers caused the seizure and search of the house and Plaintiff's arrest.[9] (Doc. 27 at 9-10; Doc. 33 at 10.) The court agrees. The allegations in the complaint show such claims accrued no later than April 3, 2015, by which time Plaintiff was aware of the seizure and search and had appeared before the magistrate. By that point Plaintiff had "a complete and present cause of action" such that his claims accrued. *Wallace,* 549 U.S. at 388. *Cf. Humphreys v. City of Ganado, Tex.*, 467 F. App'x 252, 256 (5th Cir. 2012) (plaintiff failed to explain why accrual of the statute of limitations on his municipal liability claims should be treated differently than the accrual of his claims against the individual officers). And again, Plaintiff articulates no basis for tolling the limitations period. The

---

[8] The court notes the complaint alleges that Defendants' actions caused Plaintiff to suffer "nearly two years of wrongful incarceration…." (Doc. 1 at 25.) The record, however, clearly shows that after Plaintiff was arrested on March 20, 2015, he spent about five days in custody before being released on bond. He thereafter remained on bond and ultimately received a sentence of time served. (*See* D. Kan. No. 15-10032, Docs. 78 at 1; 82 at 1.) He thus had some restraints on his liberty but was not "incarcerated" for two years.
[9] Defendants do not argue that Count I or II is barred by the statute of limitations insofar as it asserts a malicious prosecution theory. *Cf. Heck,* 512 U.S. at 490 (§ 1983 malicious prosecution claim does not accrue until the conviction or sentence is invalidated).

court thus concludes that the remaining portions of Count II must be dismissed based on the statute of limitations.

B. <u>K.S.A. 112-105b – Notice of Claim</u>.

Counts IV and V assert state law claims for negligent and intentional infliction of emotional distress against Cooke, Sowers, and Lux.[10] These Defendants contend the court lacks subject matter jurisdiction over the claims because Plaintiff did not present notice of the claims to the city or county in accordance with K.S.A. 12-105b. Plaintiff does not dispute that he did not submit the notice called for by the statute, but argues he was not required to do so because "federal law preempts state notice-of-claim rules." (Doc. 41 at 15.)

Plaintiff's argument is unpersuasive and without support. The only case he cites as authority – *Felder v. Casey,* 487 U.S. 131 (1988) – held that a state notice of claim statute was preempted from application to a federal claim under § 1983. That holding has no application to claims for relief under state law such as Counts IV and V. *See Felder,* 487 U.S. at 151 ("federal courts entertaining state-law claims against [state] municipalities are obligated to apply the notice-of-claim provision," but federal law preempts its application to a § 1983 claim).

Section 12-105b(d) requires any person having a claim against a municipality or against an employee of a municipality that could give rise to an action under the Kansas Tort Claims Act to "file a written notice as provided in this subsection before filing an action." It further provides that "[n]o person may initiate an action against a municipality or against an employee of a municipality unless the claim has been denied in whole or in part." *Id.* Compliance with this provision is jurisdictional in nature under Kansas law, such that "[i]f the statutory requirements are not met, the court cannot acquire jurisdiction" over the municipality or the employee on the

---

[10] Plaintiff has conceded the state law claims should be dismissed as to Kingman County, Hill, and City of Kingman. (Doc. 41 at 14; Doc. 42 at 19.)

claim. *See Myers v. Bd. of Cty. Com'rs of Jackson Cty.,* 280 Kan. 869, 877, 127 P.3d 319, 325 (2006). The court accordingly concludes that the claims in Counts IV and V of the complaint must be dismissed for lack of jurisdiction.

C. <u>§ 1983 Malicious Prosecution</u>.

The § 1983 claims not yet addressed in this order are labeled in Count I as: malicious prosecution, use of unlawfully seized evidence, unlawful investigatory techniques, and wrongful conviction and imprisonment. (Doc. 1 at 23.) The complaint asserts that "Defendant's acts violated [Plaintiff's] clearly established Fourth and Fourteenth Amendment rights to be secure in his person and property from unreasonable searches and seizures." (*Id.* at 24.) Defendants argue these allegations fail for several reasons, including that they fail to state a claim upon which relief can be granted. (*See* Doc. 33 at 10-14.) Plaintiff's response argues the allegations state a valid § 1983 claim for relief based on a theory of malicious prosecution. (Doc. 41 at 11-14.)

These claims are arguably deficient for more than one reason, including the failure of the complaint to allege facts showing each Defendant's role in the alleged violations. Undifferentiated and non-specific allegations such as "Defendants instigated and continued the unlawful prosecution of Plaintiff Shrum" (Doc. 1 at 24) are not sufficient to state a plausible claim for relief. *See Brown v. Montoya,* 662 F.3d 1152, 1165 (10th Cir. 2011) (it is particularly important in a § 1983 case against a number of governmental actors in their individual capacity that the complaint make clear exactly who is alleged to have done what to whom, as distinguished from collective allegations). At any rate, for reasons discussed below the remaining allegations in Count I cannot support a § 1983 claim under a malicious prosecution theory.

In *Wallace,* the Supreme Court noted that common law malicious prosecution was characterized "by wrongful institution of legal process." *Wallace,* 549 U.S. at 390. "Unlike a false

13

arrest claim, malicious prosecution concerns detention only '[a]fter the institution of legal process.'" *Wilkins v. DeReyes,* 528 F.3d 790, 798 (10th Cir. 2008) (citation omitted.)  The Tenth Circuit has recognized a Fourth Amendment § 1983 claim grounded in malicious prosecution for allegations similar to those asserted by Plaintiff in Count I.  *See Margheim v. Buljko,* 855 F.3d 1077, 1085 (10th Cir. 2017).  The Tenth Circuit requires five elements for such a claim:  (1) the defendant caused the plaintiff's continued confinement or prosecution;  (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages.  *Id.* (citation omitted.)

Plaintiff's allegations fail to show the second essential element of the claim.  As case law makes clear, the favorable termination element requires that "the termination of the original criminal proceeding 'must in some way indicate the innocence of the accused.'"  *Margheim,* 855 F.3d at 1086 (citing *Cordova v. City of Albuquerque,* 816 F.3d 645, 651 (10th Cir. 2016)).  The court must "look to the 'stated reasons for the dismissal as well as to the circumstances surrounding it' to determine if 'the dismissal indicates the accused's innocence.'"  *Id.* (quoting *Wilkins,* 528 F.3d at 803.)  But dismissals "based on orders suppressing evidence on technical grounds having little or no relation to the evidence's trustworthiness" are not indicative of innocence.  *Id.* (citing *Wilkins,* 528 F.3d at 804).  In Plaintiff's criminal case, the charge against him was dismissed after the Tenth Circuit found officers had no probable cause or consent to initially seize or search Plaintiff's house.  But that finding in no way impugned the *reliability or trustworthiness* of the evidence indicating Defendant possessed ammunition and firearms in his house and therefore likely violated 18 U.S.C. § 922(g) given his status as a convicted felon.  The dismissal of the charge based upon an unconstitutional search was not under circumstances indicative of innocence and

14

therefore does not satisfy the second essential element of a malicious prosecution claim. *See Margheim,* 855 F.3d at 1086 (noting "cases finding prosecutorial abandonment following suppression of evidence on constitutional grounds was not 'favorable'") and at 1086-87 ("[A] plaintiff generally cannot maintain a malicious prosecution action unless his charges were dismissed in a manner indicative of innocence, even when he was entitled to dismissal on statutory or constitutional grounds."); *McKnight v. City of Topeka, Kansas*, No. 19-2353-DDC-GEB, 2020 WL 5747917, at *16 (D. Kan. Sept. 25, 2020) ("Like the *Margheim* plaintiff, whose dismissal didn't indicate he actually hadn't possessed illegal drugs, nothing here indicates plaintiff wasn't a felon and didn't possess … ammunition."); *Clark v. Wills*, No. 16-3119-SAC, 2017 WL 5598261, at *4 (D. Kan. Nov. 21, 2017) ("The prosecutor's dismissal of the charges related to the March 7th events came after the federal district court suppressed evidence observed and seized from the defendant and his vehicle during an investigative detention for which the officers lacked reasonable suspicion. … Dismissal here based on the suppression order is not a favorable termination under the holding in *Margheim* as there is nothing alleged questioning the defendant's actual commission of the crimes charged out of the March 7th events.")  Because Plaintiff has failed to allege facts plausibly stating a claim for relief on a malicious prosecution theory, his remaining allegations in Count I must also be dismissed.

### IV. Conclusion

The motion to dismiss (Doc. 26) by Defendants Lux, Sowers, and City of Kingman, and the motion to dismiss (Doc. 32) by Defendants Cooke, Hill, and Kingman County are GRANTED. The complaint is hereby DISMISSED as to these Defendants. The dismissal of Plaintiff's state law claims is based on a lack of jurisdiction and is without prejudice.

The still-pending motion to dismiss (Doc. 30) by Defendants Downs, Sprague, Tierney, and United States of America is DENIED AS MOOT in view of the prior dismissal of these Defendants.  (Doc. 45.)

The Clerk is directed to enter judgment of dismissal in favor of Defendants.  IT IS SO ORDERED this 20th day of July, 2021.

          s/ John W. Broomes
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE